

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOHAMMAD RIMI,            )
Detainee,                      )
      Guantanamo Bay Naval Station   )
      Guantanamo Bay, Cuba; and     )
OMAR DEGHAYES, as the next friend of  )
Mohammad Rimi            )
                         )

*Petitioners,*            )

v.                         

GEORGE W. BUSH,
      President of the United States
      The White House
      1600 Pennsylvania Ave., N.W.
      Washington, D.C. 20500;

DONALD RUMSFELD,
      Secretary, United States
      Department of Defense
      1000 Defense Pentagon
      Washington, D.C. 20301-1000;

ARMY BRIG. GEN. JAY HOOD,
      Commander, Joint Task Force - GTMO
      JTF-GTMO
      APO AE 09360
      c/o United States Army
      Army Pentagon
      Washington, DC 20310-2000; and

ARMY COL. MIKE BUMGARNER,
      Commander, Joint Detention
      Operations Group, JTF - GTMO
      JTF-GTMO
      c/o United States Army
      Army Pentagon
      Washington, DC 20310-2000
      APO AE 09360

*Respondents.*

**PETITION FOR WRIT
OF HABEAS CORPUS**

CASE NUMBER   1:05CV02427

JUDGE: Richard J. Leon

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 12/19/2005

M126395.1

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Mohammad Rimi seeks the Great Writ.  A citizen of Libya, Petitioner Rimi

acts on his own behalf and through his Next Friend Omar Deghayes.  *See* Authorization of Omar

Deghayes (Ex. A).  Petitioner Rimi is a civilian wrongly classified as an "enemy combatant" by

the President of the United States and is being held virtually *incommunicado,* in Respondents'

unlawful custody in Camp Delta, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba

("Guantánamo").  His detention is without lawful basis, without charge, and without access to

counsel or any fair process by which he might challenge his detention.  Petitioner is being held

under color and authority of the executive, in violation of the constitution, laws, and treaties of

the United States, in violation of the fundamental due process principles of the common law, and

in violation of customary international law.  Accordingly, this Court should issue a writ of

Habeas Corpus compelling Respondents either to release Petitioner Rimi or to establish in this

Court a lawful basis for Petitioner Rimi's detention.  This Court should also order injunctive and

declaratory relief.

## I. JURISDICTION

1.      Petitioners bring this action under 28 U.S.C. §§ 2241(a), (c)(1), and (c)(3) and

2242.  Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651,

2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth and Eighth

Amendments to the United States Constitution; the American Declaration on the Rights and

Duties of Man; and customary international law. Insofar as they seek declaratory relief,

Petitioners also rely upon Fed. R. Civ. P. 57.

2.      This Court has authority under 28 U.S.C. § 2241 to grant the Writ of Habeas

Corpus and, under 28 U.S.C. § 2242, to entertain the Petition filed by Omar Deghayes as Next

Friend to Petitioner.

3.    This Court is empowered to declare the rights and other legal relations of the parties in this matter by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction.

## II. VENUE

4.    Venue is proper in the United States District Court for the District of Columbia because at least one Respondent resides in the district, a substantial part of the events or omissions giving rise to the claim occurred in the district, at least one Respondent may be found in the district, and all Respondents are either officers or employees of the United States or an agency thereof acting in their official capacities. *See* 28 U.S.C. §§ 1391(b); 1391(e).

## III. PARTIES

5.    Petitioner is a Libyan citizen who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo. Upon information and belief, Petitioner Rimi desires undersigned counsel to file this petition on his behalf. *See* Authorization of Omar Deghayes (Ex. A).

6.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner Mohammad Rimi is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is ultimately responsible for Petitioner Mohammad Rimi's unlawful detention and is sued in his official capacity.

7.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, his authority under the

3

laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioner Mohammad Rimi. He is sued in his official capacity.

8.      Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioner Mohammad Rimi and is sued in his official capacity.

9.      Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Mohammad Rimi is presently held. He is the immediate custodian responsible for Petitioner Mohammad Rimi's detention and is sued in his official capacity.

10.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

## IV. STATEMENT OF FACTS

11.     Under the unique and extraordinary circumstances of this case, the factual allegations made "upon information and belief" in the following paragraphs are made pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, on the basis that those allegations "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

12.     Upon information and belief, Petitioner Rimi desires undersigned counsel to file this petition on his behalf. Specifically, petitioner Rimi seeks to enforce his right to a judicial

determination by an appropriate and lawful authority as to whether there is a lawful and factual

basis for Respondents' determination that he is either an "enemy combatant" as defined by the

United States Supreme Court in *Hamdi v. Rumsfeld,* 542 U.S. 507, 516, 124 S. Ct. 2633, 2639

(2004) (plurality), or an "enemy combatant" as that term is defined and used by the Executive in

the Combatant Status Review Tribunals.

13.    Upon information and belief, Petitioner Rimi is not, nor has he ever been, an

enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition

adopted by the government in any civil or military proceeding.

14.    Upon information and belief, Petitioner Rimi is not, nor has he ever been, an

"enemy combatant" who was "part of or supporting forces hostile to the United States or

coalition partners in Afghanistan and who engaged in an armed conflict against the United States

there." *Hamdi,* 542 U.S. at 516, 124 S. Ct. at 2639 (internal quotations omitted).

15.    Upon information and belief, Petitioner Rimi was not a member of the Taliban's

armed forces or Al Qaeda at the time of his seizure and detention. Prior to his detention,

Petitioner Rimi did not commit any violent act against any American person or property. He had

no involvement, direct or indirect, in the terrorist attacks on the United States on September 11,

2001, the ensuing international armed conflict, or any act of international terrorism attributed by

the United States to Al Qaeda. Petitioner Rimi remains incarcerated at the United States Naval

base at Guantanamo, Cuba, a territory over which the United States exercises exclusive

jurisdiction and control.

16.    Respondents have not afforded Petitioner Rimi any procedures that would satisfy

his rights under the most fundamental common law notions of due process, the United States

Constitution, the laws and treaties of the United States, or customary international law.

17.    Upon information and belief, Petitioner Rimi desires to pursue in the United States courts every available legal challenge to the lawfulness of his detention.

### The Joint Resolution

18.    In the wake of the September 11, 2001 attacks, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

19.    Upon information and belief, Petitioner Rimi is neither properly detained pursuant to President Bush's authority as Commander-in-Chief nor under the laws and usages of war or the Joint Resolution because Petitioner Rimi did not participate in the armed conflict at any point in time.

20.    Neither the Respondents nor any other agents of the United States government have produced any information to support any link between Petitioners and organizations or persons involved in the terrorist attacks on September 11, 2001, or any other terrorist attack attributed by the United States to al Qaeda or any other international terrorist group.

### The Military Order

21.    On November 13, 2001, Respondent Bush issued a Military Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

    i.     is or was a member of the organization known as al Qaeda;
    ii.    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

6

iii.   has knowingly harbored one or more individuals described in subparagraphs (i) or (ii) . . .

*See* Military Order, 66 Fed. Reg. 57,833, § 2 (November 13, 2001).  Respondent Bush must make such determination "in writing."  The Military Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

22.   The Military Order purports to vest President Bush with sole discretion to determine which individuals fall within its purview.  It establishes no standards governing the exercise of this discretion.  There is no requirement that a person detained under the Military Order be notified of the charges he may face, nor of his rights under domestic and international law.  The Military Order provides a detainee with no right to counsel, no rights to notice of consular protection or to consular access at the detainee's request, and no right to appear before a neutral tribunal to review the basis for or the legality of a detainee's continued detention.  There are no guidelines for or restrictions placed upon the length of time a detainee may be held subject to the Military Order.  Furthermore, the Military Order expressly bars review by any court.

23.   The Military Order was promulgated in the United States and in this judicial district.  Upon information and belief, the decision to incarcerate Petitioner Rimi was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner Rimi at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

24.   Upon information and belief, Respondent Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Rimi is subject to the Military Order.  Petitioner is not properly subject to the Military Order.

25.     Petitioner has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, and/or the laws and usages of war in that Petitioner has been denied the process due to him under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, and international law.

26.     In the related case of *Rasul v. Bush*, 215 F. Supp. 2d 55 (D.D.C. 2002), Respondents contended that the petitioners in that case were being detained, not pursuant to the President's Military Order, but under the President's authority as Commander in Chief and under the laws and usages of war.  However, Petitioners in the instant matter were not arrested or detained by the United States in the course of the armed conflict.

## Guantánamo Bay Naval Station

27.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba.  In April 2002, prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo.  Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

28.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004).

29.     On a date unknown to counsel for Petitioners, but known to Respondents, the United States military transferred Petitioner Rimi to Guantánamo, where upon information and belief, Petitioner Rimi has been held at Guantanamo since that date in the custody and control of Respondents.

## The Conditions of Detention at Guantánamo

30.     Upon information and belief, since gaining control of Petitioner Rimi, the United States military has held him virtually *incommunicado*.

31.     Upon information and belief, Petitioner Rimi has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges. He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner Rimi should not be informed of these rights. As a result, Petitioner Rimi lacks any ability to protect or to vindicate his rights under domestic and international law.

32.     Upon information and belief, Petitioner Rimi may have been forced to provide involuntary statements to Respondents' agents at Guantánamo.

33.     Upon information and belief, Petitioner Rimi has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.,* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005), available at http://web.amnesty.ord/library/index/engamr510632005; Physicians for Human Rights, "Break Them Down: Systematic Use of Psychological Torture by US Forces," Ch. 3 (2005), available at

http://www.phrusa.org/research/torture/pdf/psych_torture.pdf;  United Nations Press Release,

"United Nations Human Rights Experts Express Continued Concern About Situation of

Guantánamo Bay Detainees," Feb. 4, 2005;  International Committee of the Red Cross, Press

Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International Committee of

the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001

and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States

of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22

(Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); Barry

C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense

Lawyers Champion, Nov. 2004, at 4-5.

   34.  Indeed, many of these violations – including isolation for up to 30 days, 20-hour

interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, forced

nudity and humiliation, hooding, and the use of dogs to create anxiety and terror – were actually

interrogation techniques approved for use at Guantánamo by Respondent Rumsfeld. *See e.g.*,

Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov.

27, 2002), approved by Defense Secretary Donald H. Rumsfeld on December 2, 2002); *Pentagon

Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment

of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo
are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul,
Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo
Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23
july04.pdf). The Department of Defense also informed the Associated Press that a number of
interrogators at Guantanamo have been demoted or reprimanded after investigations into
accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov.
4, 2004.

35.    In a confidential report to the United States government, the International Committee of the Red Cross ("ICRC") charged the United States military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4.

36.    Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving beatings, temperature extremes, dogs, prolonged isolation, and loud music. *See, e.g.,*:

   a.  Carol D. Leonnig, "Guantanamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land," *Wash. Post*, Aug. 13, 2005, at A18;

   b.  Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005);

   c.  Amnesty International, *Guantánamo: An Icon of Lawlessness,* Jan. 6, 2005, at 3-5;

   d.  Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11;

11

e. Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1;

f. Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1;

g. Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1;

h. Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19.

37.    In fact, many of the egregious interrogation techniques used in the Abu Ghraib detention center and other detention facilities in Iraq—such as the use of aggressive dogs to intimidate detainees, sexual humiliation, stress positions, and sensory deprivation—were pioneered at Guantánamo for use on post-September 11, 2001 detainees. *See* Josh White, "Abu Ghraib Dog Tactics Came From Guantánamo; Testimony Further Links Procedures at 2 Facilities," *Wash. Post*, July 27, 2005, at A14; *and* Josh White, "Abu Ghraib Tactics Were First Used at Guantánamo," *Wash. Post*, July 14, 2005 at A1.

38.    Upon information and belief, the unlawful interrogation techniques used by Respondents at Guantánamo include not only direct physical and psychological abuse but also impermissible conduct intended to undermine the detainees' due process rights, such as representing to detainees that government agents are their habeas lawyers for the express purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

39.    In addition, military defense lawyers have been instructed to limit their representation of detainees in a manner that would operate to the detriment of their clients in

violation of due process requirements. *See* David Johnston & Neil Lewis, "Lawyer Says

Military Tried To Coerce Detainee's Plea," *NY Times,* June 16, 2005, at A25 (Late Ed.).

      40.      Respondents, acting individually or through their agents, have stated that the

humanitarian limitations which normally apply to the United States military's use of coercive

interrogation techniques under the auspices of the Department of Defense, *do not apply* to

interrogations conducted by CIA agents or other specially-designated government officers

assigned to such work. *See* Amnesty International, "Guantánamo and Beyond: The Continuing

Pursuit of Unchecked Executive Power," at 27-43, Ch. 5, AMR 51/063/2005 (13 May 2005);

Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times,*

Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal,

Gonzales Tells Senate," *Washington Post,* Jan. 18, 2005, at A4.

      41.      In published statements, President Bush and Secretary Rumsfeld, and the

predecessors of Hood and Bumgarner, respectively, Michael Lenhert and Terry Carrico, have

proclaimed that the United States may hold the detainees under their current conditions

indefinitely. *See, e.g.,* Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld,

the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held

indefinitely at the base.  He said that the detention of some would be open-ended as the United

States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine

Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells

where detainees are being held 'We have to look at Camp X-ray as a work in progress [...]'

Lehnert told CNN.  Lehnert said plans are to build a more permanent prison 'exactly in

accordance with federal prison standards."); John Mintz, "Extended Detention in Cuba Mulled,"

*The Washington Post*, February 13, 2002 ("As the Bush Administration nears completion of new

13

rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

42.      According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited November 9, 2005).

43.      Counsel for Respondents have also consistently maintained that the United States may hold detainees such as Petitioner Rimi under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Motion to Dismiss at 22-24, Statements of Principle Deputy Associate Attorney Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1.

44.      In fact, Respondents have failed to release a number of Guantánamo detainees even after determining that the detainees are "no longer enemy combatants." *See* Robin Wright, "Chinese Detainees Are Men Without a Country; 15 Muslims, Cleared of Terrorism Charges, Remain at Guantánamo With Nowhere to Go," *Wash. Post*, August 24, 2005, at A1 (Final Ed.); Ben Fox, "U.S. to Ease Conditions for Some Detainees," *Chicago Trib.*, Aug. 11, 2005, at C4.

45.      The United States Government has acknowledged its plan to begin constructing a new, more permanent detention facility at Guantánamo. Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo Takes on the Look of Permanency," Jan. 9, 2005.

14

## Rendition

46.    During interrogations, upon information and belief, detainees at Guantanamo have been threatened with rendition or transfer to countries that permit indefinite detention without charge or trial and/or routinely practice torture. Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition. This practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

47.    The U.S. government's "extraordinary rendition" program has been well documented by key American and international news organizations, including the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . . that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

15

48.    In fact, the Government has recently announced its intention to render many

Guantánamo detainees to countries which have a documented record of human rights violations,

including state-sponsored torture. *See, e.g.,* Matthew Waxman, "Beyond Guantanamo," *Wash.*

*Times*, Aug. 20, 2005, at A17; Robin Wright and Josh White, "U.S. Holding Talks on Return of

Detainees; Administration Close to Reaching Agreements With 10 Muslim

Governments," *Wash. Times*, Aug. 9, 2005, at A13; Neil Lewis, "Guantanamo Detention Site Is

Being Transformed, U.S. Says," *NY Times*, Aug. 6, 2005, at A8 (Late Ed.); Paul Richter, "U.S. to

Repatriate 110 Afghans Jailed at Guantanamo Bay," *LA Times*, Aug. 5, 2005, at A18.

49.    In a report released on February 28, 2005, the United States Department of State

found that the human rights record of the Lybian government "remained poor, and the

Government continues to commit numerous serious abuses. . . . Security forces arbitrarily

arrested and detained persons, and prisoners were held incommunicado. Many political

detainees were held for years without charge or trial." Dep't of State, Country Reports on

Human Rights Practices 2004: Lybia (Feb. 25, 2004), available at

http://www.state.giv/g/drl/rls/hrrpt/2004/41727.htm.

50.    Moreover, upon information and belief, the Government is conditioning the

transfer or rendering of detainees to their countries of origin on the requirement that the home

country imprison the detainee without regard to the detainee's individual factual or legal

situation. *See* Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees;

Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Post*,

August 9, 2005, at A13; BBC Worldwide Monitoring, "USA to release 107 Yemenis from

Guantanamo Bay," August 10, 2005 (available from LEXIS, MWP90 file) ("The US authorities

declared few days ago that they would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the condition [that they are] to be put in jail.").

51.    Upon information and belief, Petitioner Rimi is at risk of being rendered, returned or transferred without lawful process to a country that permits indefinite detention without process and/or engages in torture or abuse during interrogation.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

52.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

53.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States. President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioner Rimi the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

17

54.    To the extent that Petitioner Rimi's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner, and therefore also violates 28 U.S.C. § 2241 (c)(3).

55.    To the extent that Petitioner Rimi's detention is without basis in law and violates the common law principles of due process embodied in 28 U.S.C. § 2241 (c)(1), Petitioner's detention is unlawful.

56.    Accordingly, Petitioner Rimi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF
THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

57.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

58.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Rimi to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

59.    Accordingly, Petitioner Rimi is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

60.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

61.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Rimi the process accorded to persons seized and detained

18

by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

62.    Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

63.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

64.    Accordingly, Petitioner Rimi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

65.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

66.    By the actions described above, Respondents have denied and continue to deny Petitioner Rimi the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

67.    Accordingly, Petitioner Rimi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

19

## FIFTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - TORTURE)

68.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

69.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Rimi in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Rimi or for other purposes. Among other abuses, Petitioner Rimi has been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

70.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner Rimi.

72.     Petitioner Rimi was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - WAR CRIMES)

73.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.     By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner Rimi constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

75.     As a result of Respondents' unlawful conduct, Petitioner Rimi has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

76.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

77.    The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Rimi, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

78.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

79.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Rimi.

80.    Petitioner Rimi was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

EIGHTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE -
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

81.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

82.    The acts described herein constitute arbitrary arrest and detention of Petitioner Rimi in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

83.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Rimi in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

84.    As a result of Respondents' unlawful conduct, Petitioner Rimi has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

85.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

86.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Rimi in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

87.    As a result of Respondents' unlawful conduct, Petitioner Rimi has been, and continues to be deprived of his freedom, separated from his family, and forced to suffer severe

physical and mental abuse, and is therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

TENTH CLAIM FOR RELIEF<br>(ARTICLE II OF THE UNITED STATES CONSTITUTION-<br>UNLAWFUL DETENTION)

88.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

89.    Petitioner Rimi is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 542 U.S. __, 124 S. Ct. 2633, 2642 n.1 (2004).

90.    By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Rimi and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Rimi.

91.    The military seizure and detention of Petitioner Rimi by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution.  To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

92.    To the extent that Respondents assert that their authority to detain Petitioner Rimi derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

93.    Accordingly, Petitioner Rimi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL
DETENTION)

94.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

95.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

96.    By arbitrarily and capriciously detaining Petitioner Rimi in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

97.    Accordingly, Petitioner Rimi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TWELFTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS
DENIAL OF DUE PROCESS)

25

98.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

99.    By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Rimi the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

100.    Accordingly, Petitioner Rimi is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

### THIRTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

101.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

102.    By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Rimi to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

103.    Accordingly, Petitioner Rimi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FOURTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

104.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

105.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Rimi's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Rimi's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

106.    Accordingly, Petitioner Rimi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FIFTEENTH CLAIM FOR RELIEF
### (DUE PROCESS CLAUSE - RENDITION)

107.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

108.    Upon information and belief, Petitioner Rimi is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

109.    Accordingly, Petitioner Rimi is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

### SIXTEENTH CLAIM FOR RELIEF
### (CONVENTION AGAINST TORTURE AND
### CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

110.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

111.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the

Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

112.    Accordingly, Petitioner Rimi is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SEVENTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

113.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

114.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

115.    Accordingly, Petitioner Rimi is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

**II. PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray for relief as follows:

1.    Grant the Writ of Habeas Corpus and order Respondent to release Petitioner Rimi from his current unlawful detention;

2.    Order that Petitioner Rimi be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

28

3.     Order that Petitioner Rimi cannot be transferred to any other country without the specific written agreement of Petitioner and Petitioner's counsel while this action is pending;

4.     Order that Petitioner Rimi cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition will be subject to torture

5.     Order Respondents to allow counsel to meet and confer with Petitioner Rimi, in private and unmonitored attorney-client conversations;

6.     Order Respondents to cease all interrogations of Petitioner Rimi, direct or indirect, while this litigation is pending;

7.     Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Rimi;

8.     Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

9.     Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Rimi without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of the common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

10.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal

statutory law, and international law, including, if necessary, designating Petitioner

Deghayes to act as Next Friend of Petitioner Rimi.


Dated:        December 19, 2005              Respectfully submitted,

                                             NIXON PEABODY LLP
                                             Counsel for Petitioners

                                             *W. Scott O'Connell*

                                             W. Scott O'Connell (NH 13800)
                                             Courtney Worcester (NH 14403)
                                             Torey B. Cummings (NH 17186)
                                             889 Elm Street
                                             Manchester, NH  03105
                                             Tel: 603.628.4000
                                             Fax: 603.628.4040


                                             *Of Counsel*
                                             Barbara J. Olshansky (NY0057)
                                             Director Counsel
                                             Tina Monshipour Foster (TF5556)
                                             Gitanjali S. Gutierrez (GG1234)
                                             CENTER FOR CONSTITUTIONAL RIGHTS
                                             666 Broadway, 7th Floor
                                             New York, New York 10012
                                             Tel: (212) 614-6439
                                             Fax: (212) 614-6499

# AUTHORIZATION

I, OMAR DEGHAYES, UNDERSTAND THE TERM "NEXT FRIEND", AND AM ACTING IN THAT CAPACITY ON BEHALF OF THE FOLLOWING:

| | | |
|---|---|---|
| ABDAUL RAZAK ALI-HAJ | CAMP Δ | LIBYA |
| ISMAIL (ALKHAMESI) | CAMP Δ | LIBYA |
| AHMED (TRIPOLI) | CAMP Δ or IV | LIBYA |
| ABDUL RAUF (ASABI) | CAMP IV | LIBYA |
| ABO ABDUL RAUF (ZALITA■■■) | CAMP Δ ■■■■ | LIBYA |
| FARIS (DARNA) | CAMP Δ | LIBYA |
| SAIB (DARNA) | CAMP Δ | LIBYA |
| OMAR MOHAMMED ~~ABDUL~~ (~~■■■~~ KHALIFA ■■■) | CAMP V | LIBYA |
| MOHAMMED (RIMI) | CAMP Δ | LIBYA |

I KNOW THAT THEY WANT LEGAL ASSISTANCE TO SECURE THEIR FREEDOM AND I HEREBY AUTHORIZE Clive Stafford Smith, AND ANYONE AUTHORIZED BY HIM, TO ASSERT MY LEGAL RIGHTS.

8th MARCH 2005.

_____

OMAR DEGHAYES

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners hereby certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioners without compensation.

Dated:     December 19, 2005          NIXON PEABODY LLP

*W. Scott O'Connell*

W. Scott O'Connell (NH 13800)
Courtney Worcester  (NH 14403)
Torey B. Cummings (NH 17186)
889 Elm Street
Manchester, NH  03105
Tel: 603.628.4000
Fax: 603.628.4040


*Of Counsel*
Barbara J. Olshansky (NY0057)
Director Counsel
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

M126395.1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| | ) | Civil Action No. **05 2427** |
| v. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| Defendant(s) | ) | |

## CONSENT TO PROCEED BEFORE
## A UNITED STATES MAGISTRATE JUDGE FOR ALL PURPOSES

In accordance with the provisions of 28 U.S.C. § 636(c)(3), the parties to the above-captioned civil matter by and with the advice of their counsel hereby voluntarily waive their rights to proceed before a District Judge of the United States District Court and consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial.

_____          _____
Attorney for the Plaintiff(s)                              Date


_____          _____
Attorney for the Defendant(s)                             Date

NOTICE:      The foregoing Consent by Counsel shall be accepted upon the understanding that all counsel have secured the consent of their respective clients to the Consent and Referral to a United States Magistrate Judge for all purposes.

## ORDER OF REFERENCE

IT IS HEREBY ORDERED that the above-captioned matter be referred to a United States Magistrate Judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c)(3) and the foregoing consent of the parties.

_____          _____
United States District Judge                              Date

NOTE:   RETURN THIS FORM TO THE CLERK OF THE COURT <u>ONLY</u> IF ALL PARTIES HAVE CONSENTED TO PROCEED BEFORE A UNITED STATES MAGISTRATE JUDGE.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ncy M. Mayer-Whittington
rk of Court

## NOTICE OF RIGHT TO CONSENT TO TRIAL
### BEFORE A UNITED STATES MAGISTRATE JUDGE

The substantial criminal caseload in this Court and the requirements of the criminal Speedy Trial Act frequently result in the delay in the trial of civil cases. Aware of the hardship and expense to the parties, counsel, and witnesses caused by the delays which are beyond the control of the Court, this notice is to advise you of your right to trial of your case by a United States Magistrate Judge. By statute, 28 USC § 636(c), Fed.R.Civ.P. 73 and Local Civil Rule 73.1, the parties, by consent, can try their case by means of a jury trial or bench trial before a United States Magistrate Judge. Appeals from judgments and final orders are taken directly to the United States Court of Appeals for the District of Columbia Circuit, in the same manner as an appeal from a judgment of a District Judge in a civil case.

## WHAT IS THE PROCEDURE?

One of the matters you are required to discuss at the meet-and-confer conference mandated by Local Civil Rule 16.3 is whether the case should be assigned to a United States Magistrate Judge for all purposes, including trial

All parties must consent before the case is assigned to a Magistrate Judge for trial. You may consent at any time prior to trial. If you expressly decline to consent or simply fail to consent early in the case, you are not foreclosed from consenting later in the case. However, a prompt election to proceed before a Magistrate Judge is encouraged because it will facilitate a more orderly scheduling of the case.

Counsel for the plaintiff has been furnished a copy of the "Consent to Proceed Before a United States Magistrate Judge for all Purposes" form. If and when the form is executed, your response should be made to the Clerk of the United States District Court only.

## WHAT IS THE ADVANTAGE?

The case will be resolved sooner and less expensively. The earlier the parties consent to assigning the case to a Magistrate Judge the earlier a firm and certain trial date can be established, even if the case is to be tried to a jury.

Upon the filing of the consent form and with the approval of the District Judge, the case will be assigned to all purposes to a Magistrate Judge.

CO-942A
Rev. 7/99

```
======NO REFUND WITHOUT RECEIPT======
   CHECK TENDERED *              $5.00
          5.00
===== T O T A L =======
          5.00
086900   FILING FEE  CIVIL
CASE # 05-2427
======NO REFUND WITHOUT RECEIPT======
 DC   1-2 LATO        Receipt # 140708
  12/20/05                 9:07:47 AM
           WASHINGTON D.C.
    U.S. DISTRICT COURT
```