IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SLITI v. BUSH | ) ) ) | Civil Action No. 05-0429 (RJL) |
| HAMMODAH v. BUSH | ) ) | Civil Action No. 05-0795 (RJL) |
| KHAN v. BUSH | ) ) ) | Civil Action No. 05-1010 (RJL) |
| RIMI v. BUSH | ) ) | Civil Action No. 05-2427 (RJL) |

**RESPONDENTS' BRIEF FILED PURSUANT TO THE COURT'S
ORDER OF JULY 30, 2008 REGARDING TRANSFERRED PETITIONERS**

**INTRODUCTION**

Pursuant to this Court's Order of July 30, 2008, respondents respectfully submit that this Court should dismiss as moot the habeas petitions of those petitioners in the above-referenced cases who have been transferred to foreign governments and over whom the United States has relinquished all legal and physical custody. As respondents showed in their status report filed on July 14, 2008, the United States transferred petitioners Mohammad Rimi, Mohabat Khan, Sofian Ebrahim Hamad Hamoodah, and Abdullah Bin Omar Al Hajji [hereinafter "transferred petitioners"] consistent with the policies and practices pertaining to such transfers as outlined in the declarations of Ambassador Clint Williamson and Deputy Assistant Secretary of Defense for Detainee Affairs Sandra Hodgkinson. *See* Respondents' Status Report In Response to Court's July 3, 2008 Order at 1. Because the transferred petitioners are no longer within the legal or physical custody of the United States, and because "the essence of habeas corpus is an attack by a person *in custody* upon the legality of that custody," *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (emphasis added), their habeas petitions should be dismissed as moot.

**ARGUMENT**

Article III courts are limited "to deciding 'actual, ongoing controversies.'" *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)); *accord Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (a federal court has no "power to render advisory opinions [or] . . . 'decide questions that cannot affect the rights of litigants in the case before them.'") (citation omitted). As the D.C. Circuit has held, "for a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition *and* that his subsequent release has not rendered the petition moot, *i.e.*, that he continues to present a case or controversy under Article III, § 2 of the Constitution." *Qassim v. Bush*, 466 F.3d 1073, 1078 (D.C. Cir. 2006) (quoting *Zalawadia v. Ashcroft,* 371 F.3d 292, 297 (5th Cir. 2004) (emphasis in original)). *Qassim* itself involved Guantanamo detainees transferred to the custody of the Government of Albania. The Court found that those detainees' transfer mooted their appeal from the district court's denial of their habeas petition because the petitioners "allege no collateral consequences of their past detention that [the Court could] now redress." *Id.* at 1077-78.

Thus, in order to avoid dismissal on mootness grounds, the transferred petitioners bear the burden of showing that despite their transfers to the custody of foreign governments, they continue to suffer "some concrete and continuing injury . . . some collateral consequences" of the type amenable to judicial redress. *Id.* at 1077 (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)); *see also Idema v. Rice*, 478 F. Supp. 2d 47, 51 (D.D.C. 2007) ("The [habeas] petitioner bears the burden of establishing collateral consequences."). This burden is a heavy one because the designation of enemy combatant by itself does not carry the type of "collateral consequence" sufficient to present a case or controversy in a habeas case. An enemy combatant designation is

not a criminal conviction; the identification and detention of enemy combatants is a preventive measure taken "to prevent captured individuals from returning to the field of battle and taking up arms once again." *See Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality opinion). And yet, when examining the availability of habeas relief after release from federal custody, the Supreme Court has never presumed that adverse collateral consequences will flow from a determination other than a criminal conviction. *See Spencer v. Kemna*, 523 U.S. 1, 7-14 (1998) (declining to presume adverse collateral consequences flowing from revocation of parole); *Lane v. Williams*, 455 U.S. 624, 631–33 (1982) (declining to presume adverse collateral consequences from determinations that the respondents had violated parole).

Moreover, speculative or intangible repercussions are not sufficient. *See, e.g., McBryde v. Cmte. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the U.S.,* 264 F.3d 52, 57 (D.C. Cir. 2001) (noting that "when injury to reputation is alleged as a secondary effect of an otherwise moot action, we have required that 'some tangible, concrete effect' remain, *susceptible to judicial correction*.") (emphasis added). Nor is it sufficient to show that imminent or present repercussions flowed from the independent acts and judgments of private parties or foreign sovereigns. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (when the issue of justiciability "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury").

Put differently, for a collateral consequence to be legally cognizable in a habeas case, it

3

must be redressable by an order of this Court.  *Greater Tampa Chamber of Commerce v. Goldschmidt*, 627 F.2d 258, 263 (D.C. Cir. 1980) (holding that a challenge against an executive agreement was not a justiciable case or controversy in part because redress of the plaintiffs' alleged injuries would depend on the independent response of the United Kingdom).  Indeed, the Supreme Court previously has limited post-release habeas relief to "civil disabilities" imposed on former detainees by operation of federal or state law.  *See Lane*, 455 U.S. at 631-33; *cf. Carafas v. La Vallee*, 391 U.S. 234, 237-38 (1968) (case not moot after expiration of sentence because of certain statutory consequences of being a convict *under state law,* such as losing the right to vote, to serve as an official in a labor union, to serve as a juror or to engage in certain businesses).

Thus, in *Idema v. Rice*, 478 F. Supp. 2d 47, 51 (D.D.C. 2007), this Court found that "non-statutory consequences," such as damage to a petitioner's professional reputation and denial of parental visitation rights, did not amount to legally cognizable collateral consequences that would allow a habeas petitioner to continue challenging his alleged unlawful detention by the United States in Afghanistan.  The Court found that the alleged adverse consequences, while unfortunate, did not prevent the habeas action from becoming moot, because they were "based on the discretionary decisions of employers or judges and [were] not legally prescribed consequences of incarceration" that were "imposed by state or federal law."  *Id.* at 52.  The Court further observed that it had no power to affect the discretionary decisions of prospective employers, family court judges, or foreign authorities.  *Id.*

Similarly, in *Al Joudi v. Bush*, No. 05-CV-0301, 2008 WL 821884 (D.D.C. March 26, 2008), this Court dismissed as moot a habeas petition filed by former Guantanamo detainees who

were transferred to the control of the Government of Saudi Arabia.  This Court found that the collateral consequences alleged by the petitioners there – *i.e.*, potential future monitoring by the Saudi Government, travel restrictions, and/or future prosecution – were speculative and not supported by any competent evidence.  *Id.* at *1.  Moreover, the Court found that the alleged potential collateral consequences were "totally dependent upon the actions of a non-party sovereign authority beyond the control of this Court."  *Id.*  As the Court reasoned:

> Even if Petitioners were subjected to the potential collateral consequences alleged, such injury would result from the actions of the Saudi Government, not the U.S. Government, and therefore would not give rise to an injury that is redressable in this *habeas* action against Respondents.  In this case, any alleged adverse collateral consequences, however serious, would be based on the discretionary decisions of someone other than Respondents, and therefore do not prevent this case from becoming moot.

*Id.*  Because a favorable judicial ruling would not preclude the Government of Saudi Arabia from taking all of the actions that the petitioners there feared, and because "no actual injury that Petitioners would suffer or be threatened with would be 'traceable to the Respondents' or 'likely to be redressed by a favorable judicial decision,'" the Court held that dismissal was required.  *Id.* (quoting *Spencer*, 523 U.S. at 7).

      Applying the above standards, it is evident that all four transferred detainees' habeas petitions are moot.  Petitioner Mohabat Khan has not alleged that he suffered any collateral consequences upon being transferred to his native country of Afghanistan in 2006.  Instead, the status report indicates only that his counsel "have not been able to ensure that Petitioner did not suffer collateral consequences" as a result of his detention at Guantanamo Bay.  *See* Khan Status Report (05cv1010, dkt. no. 59) at 2.  That is plainly insufficient to present a continued case or controversy.  In fact, even if petitioner Khan is currently in the custody of the Government of

Afghanistan (which he mentions as a possibility in his status report of July 14, 2008), that still would not present the type of cognizable collateral consequence sufficient to prevent his habeas petition from becoming moot.

Petitioner Khan's situation would be no different from the remaining three transferred petitioners at issue who allege that they remain in the custody of the foreign governments to which they were transferred. *See* Rimi Status Report (05cv2427, dkt. no. 23) at 2 (alleging that petitioner Rimi remains in the custody of the Libyan government); Hamoodah Status Report (05cv795, dkt. no. 57) at 2 (alleging that petitioner Hamoodah remains in the custody of the Libyan government); Sliti Status Report (05cv429, dkt. no. 85) at 7 (alleging that petitioner Al Hajji was convicted by a Tunisian military tribunal and sentenced to seven years in prison and five years of house arrest). The United States has no control over these foreign sovereigns' detention, prosecution, or conviction of the transferred petitioners, nor would a favorable decision in these habeas cases secure the transferred petitioners' release from the custody of those governments.

To the contrary, these transferred detainees' future status is a matter entirely within the discretion of those foreign governments and the processes that exist under their laws. In other words, "redress of [petitioners'] alleged injuries would depend on the independent response of the [foreign governments]." *Goldschmidt*, 627 F.2d at 263. That alone precludes the transferred petitioners from meeting their heavy burden of establishing that they continue to suffer the type of concrete injury amenable to judicial redress in these habeas cases.

Accordingly, there is no case or controversy, and these transferred petitioners' habeas petitions should be dismissed as moot.

Dated: August 12, 2008		Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

  /s/   Jean Lin
JOSEPH H. HUNT
VINCENT M. GARVEY
TERRY M. HENRY
JUDRY L. SUBAR
JEAN LIN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-3716
Fax: (202) 616-8470

Attorneys for Respondents