**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SLITI v. BUSH** | ) | **Civil Case No. 05-0429 (RJL)** |
| **HAMOODAH v. BUSH** | ) | **Civil Case No. 05-0795 (RJL)** |
| **KHAN v. BUSH** | ) | **Civil Case No. 05-1010 (RJL)** |
| **RIMI v. BUSH** | ) | **Civil Case No. 05-2427 (RJL)** |

**PETITIONERS' CONSOLIDATED RESPONSE TO RESPONDENTS'
MEMORANDUM IN OPPOSITION TO THEIR
<u>PETITIONS FOR WRITS OF HABEAS CORPUS</u>**

Petitioners Abdullah, Hamoodah, Khan, and Rimi ("Petitioners") respectfully submit this responsive memorandum pursuant to the Court's order dated July 30, 2008 and in response to the Government's Brief Regarding Transferred Petitioners filed August 12, 2008 ("Gov't Br.").

**I.   INTRODUCTION**

This Court should adjudicate the above-captioned petitions for writs of habeas corpus because: (1) Respondents concede that if Petitioners are suffering from collateral consequences of their imprisonment in Guantánamo and designations as enemy combatants, Petitioners' habeas corpus petitions should survive; and (2) Petitioners are suffering such collateral consequences.

Respondents have placed Petitioners at grave risk of torture by transferring Petitioners under the cloud of false enemy combatant designations that were based on unsubstantiated allegations. By transferring Petitioners without rescinding their enemy combatant designations, Respondents have guaranteed that Petitioners will be treated as "enemy combatants" by their receiving countries.

11120441.5

The consequences of the flawed designations include tangible, concrete effects, such as Petitioners' continued detention in Libya and Tunisia under particularly oppressive conditions. Because Libya and Tunisia routinely engage in torture and other forms of abuse, Respondents have put Petitioners at grave risk of torture by transferring them under the cloud of their designations.[1] Petitioners will continue to be treated as enemy combatants and terrorists and continue to experience the harm flowing from these designations unless they receive adjudication of the claims they have presented in their habeas petitions.

## II.   ARGUMENT

### A.   Petitioners Have Established That Their Claims Are Not Moot By Satisfying The Elements Of Standing.

As the Court of Appeals for the District of Columbia has established and Respondents have acknowledged, see Gov't Br. at 2, "for a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition and that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." Qassim v. Bush, 466 F.3d 1073, 1078 (D.C. Cir. 2006), quoting Zalawadia v. Ashcroft, 371 F.3d 292, 297 (5th Cir. 2004) (emphasis in original). In order to demonstrate that a case or controversy remains live, a claimant must have "alleged such a personal stake in the outcome of the controversy" to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. Warth v. Seldin, 422 U.S. 490, 498-499 (1975); Baker v.

---

[1] Counsel for Petitioner Khan, who was allegedly transferred to Afghanistan, awaits confirmation from the Respondents that the petitioner was actually released from custody. Without confirmation of that release, Mr. Khan reserves the right to join this Reply to the extent that it preserves claims for a future opportunity to bring action should further information regarding Mr. Khan become available. If Respondents verify Mr. Khan's actual release, Mr. Khan is willing to move for dismissal without prejudice.

Carr, 369 U.S. 186, 204 (1962).  The test for standing contains three elements: injury in fact; causation; and redressability.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Here, Petitioners satisfy each element:  They are injured by the collateral consequences, e.g., detention, risk of torture/torture, and harassment, of their enemy combatant designations; their detention is caused by Respondents' failure to have withdrawn the designations; and their claims are redressable because the removal of their enemy combatant designations would eliminate justification for their continued detention and mistreatment.  The satisfaction of these elements is sufficient to support Petitioners' standing to maintain their habeas petitions.

The fact that judicial relief in this Court cannot absolutely guarantee that Petitioners will not be detained on other grounds by their governments does not negate the fact that a ruling vacating their "enemy combatant" designations would provide substantial relief.  As the Supreme Court has explained:  "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his every injury."  Massachusetts v. EPA, 549 U.S. 497 (2007) (emphasis in original), quoting Larson v. Valente, 456 U.S. 228, 243 n.15 (1982); see also University Med. Ctr. v. Shalala, 5 F. Supp. 2d 4, 8 (D.D.C. 1998); Meese v. Keene, 481 U.S. 465, 476 (1987) (ruling plaintiff possessed standing where requested injunction "would at least partially redress" plaintiff's injury).

Petitioners have alleged sufficient facts to avoid dismissal at this stage.  "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."  Lujan, 504 U.S. at 571 (emphasis in original), citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989).  "[O]nce a claim has been stated adequately, it may be supported by

11120441.5                                           3

showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007).

Even if the Court were to disagree that Petitioners' current allegations suffice to establish that they possess standing, Petitioners should nonetheless be granted leave to conduct discovery on the discrete issues of injury, causation, and redressability.  This is the clear dictate of the Court of Appeals for the District of Columbia, as well as of other courts that have addressed the issue, in cases with far less at stake than is at stake here.  See, e.g., Committee for Full Employment v. Blumenthal, 606 F.2d 1062, 1067 (D.C. Cir. 1979) (emphasizing that "[a]t the very least, appellants were entitled to conduct discovery to buttress their allegation that there is a substantial likelihood that the relief they request will eliminate their injury"); Amdahl Corp. v. Baldrige, 617 F. Supp. 501, 503 (D.D.C. 1985) (granting discovery on issue of standing and allowing the parties to submit subsequent "additional memoranda of points and authorities" to ensure that "[t]he matter [had] been fully briefed and considered").

Petitioners contend that discovery will show that Libya and Tunisia are holding Petitioners at the behest of the Respondents.  Each Petitioner's transfer was arranged by Respondents, directed by Respondents, and reported to the Court by Respondents.  Some Petitioners have received on-site, follow-up visits by Respondents.  In some cases, Respondents allowed officials of the foreign governments to visit Petitioners prior to the transfer, during which time the officials made threats to Petitioners.  Accordingly, Petitioners will seek to discover in these habeas corpus proceedings any information that would substantiate their claims that Respondents understood and expected that Petitioners would be subjected to the treatment that they have faced since being transferred to their native countries.[2]

---

[2]   There can be no question that Petitioners are entitled to their respective Combatant Status Review Tribunal records.  Petitioners hereby request these records.

### B. The Effects Of The Enemy Combatant Designation Satisfy The Collateral Consequence Requirement.

Petitioners suffer as a result of their enemy combatant designations, and the conditions causing this suffering constitute collateral consequences. Accordingly, the Court should review the merits of Petitioners' claims that the enemy combatant designations were unfounded. See Carafas v. LaVallee, 391 U.S. 234, 239 (1968). Petitioners face the potentially fatal collateral consequence of being subject to indefinite detention by the Libyan and Tunisian regimes. Facing torture or death in a jail of a country known for such abuses more than suffices as a collateral consequence, especially as compared to the collateral consequences which have sufficed to sustain jurisdiction in other cases. See, e.g., Jones v. Cunningham, 371 U.S. 236, 241-43 (1963) (sustaining jurisdiction where restrictions on liberty were parole, the requirement to register an address and make periodic reports to a parole officer, and to observe restrictions on travel); Carafas, 391 U.S. at 237 (sustaining jurisdiction where restrictions on liberty were preclusion from serving as a labor union official, voting, and jury service); White v. White, 925 F.2d 287, 290 (9th Cir. 1991) (sustaining jurisdiction where restrictions on liberty were voting restrictions, jury service disqualification, special driver's license examinations, and limited access to a gun license).[3]

Respondents appear to posit that continued detention is warranted for those with the enemy combatant designation even after a designated detainee has been tried and convicted and

---

[3] Despite Respondents' claim to the contrary, see Gov't Br. at 2, the enemy combatant designation can itself constitute a source of collateral consequences, especially when that designation is unfounded and has never been challenged in a habeas court. Although Respondents argue that the Supreme Court has never found a collateral consequence where there has been no underlying criminal conviction, here Respondents have affixed the equivalent of a conviction—the "enemy combatant" label—through administrative fiat and refused Petitioners any opportunity to challenge this permanent, stigmatizing determination in a court of the United States.

has served his sentence.[4]  Petitioners' interest in removing their enemy combatant designations is thus quite strong:  The enemy combatant label in practical terms means that an individual may be detained at any time and held forever on charges from which they have been acquitted, charges never brought, or charges that are never revealed to the designee, without review.

Not surprisingly, other nations have also treated former Guantánamo detainees severely as a result of our government's "enemy combatant" designations.  The Respondents have intentionally refused to remove the enemy combatant designation and returned Petitioners to their receiving countries without ever repudiating the unfounded accusations that Petitioners were engaged in terrorism or political opposition to their receiving governments despite the fact that those receiving countries are well-known for torturing those accused of political opposition.

Specifically, Respondents have, without substantial evidence, effectively convicted petitioners Rimi and Hamoodah of membership in the Libyan Islamic Fighting Group ("LIFG"), a group that opposes the regime of Libyan President Muammar Qaddafi.  By designating them as enemy combatants, Respondents have made Rimi and Hamoodah more likely to be victims of torture.  The government has publicly acknowledged the widespread use of torture against "political opponents" in Libya. See U.S. Dep't of State, Country Conditions Reports on Human Rights Practices, March 2008, available at http://www.state.gov/g/drl/rls/hrrpt/2007/100601.htm.  Of Libya's treatment of its political prisoners, the United States Department of State reports: "The reported methods of torture and abuse included chaining prisoners to a wall for hours; clubbing; applying electric shock; applying corkscrews to the back; pouring lemon juice in open wounds; breaking fingers and allowing the joints to heal without medical care;

---

[4] See Amnesty International, Hamdan Convicted at Guantanamo, Aug. 6, 2008, (available at http://www.amnesty.org/en/news-and-updates/news/hamdan-convicted-guantanamo-20080806) ("The Pentagon had, however, confirmed yesterday that he would remain in indefinite detention as an "enemy combatant" regardless of the verdict.")

suffocating with plastic bags; depriving detainees of sleep, food, and water; hanging by the wrists; suspending from a pole inserted between the knees and elbows; burning with cigarettes; threatening with dog attacks; and beatings on the soles of the feet." Id.

Petitioner Abdullah was transferred to Tunisia despite the Government's full knowledge of the prison term—imposed in a sham, in absentia trial—awaiting him, and the fact that prisoners in Tunisia face a grave risk of torture, as previously discussed in greater detail in Petitioners' August 12, 2008 submission.

Respondents uprooted each and every Petitioner from a peaceful existence in the country in which he was living, labeled him an "enemy combatant," and transferred him against his will to a country where he faces a substantial risk of torture for his religious beliefs, despite the fact that each Petitioner expressed a fear of torture if returned. These violations of liberty are much graver than the speculative economic and other harms feared in Al Joudi v. Bush, No. 05-CV-0301, 2008 WL 821884 (D.D.C. March 26, 2008), for example, on which Respondents mistakenly rely. Similarly, unlike the petitioners in Idema v. Rice, 478 F. Supp. 2d 47 (D.D.C. 2007), who had been completely released from custody at Pulacharke facility in Afghanistan, Petitioners here remain in indefinite detention.

    C.    **Respondents Are Not Excused By Purported "Independent Acts" Of The Receiving Governments.**

Respondents' argument is misplaced that in establishing causation, it is not sufficient to show that imminent or present repercussions flowed from the independent acts and judgments of private parties or foreign sovereigns. See Lujan, 504 U.S. at 562 (noting when issue of justiciability "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, . . . it becomes the burden of the plaintiff to adduce facts showing that

those choices have been or will be made in such manner as to produce causation and permit redressability of injury"). The actions of the foreign governments at issue are far from "unfettered choices made by independent actors." Rather, Petitioners contend that the unsubstantiated allegations lodged against them by Respondents figure prominently—and sometimes to the exclusion of any other alleged bases—in the charges for which they are currently being held.

The charges for which petitioners Hamoodah and Rimi are held appear to be the allegations leveled against them by Respondents during Petitioners' respective Combatant Status Review Tribunal proceedings, at which the petitioners' enemy combatant designations were first affixed. Neither man has ever been charged with any crimes by their Libyan detainors. The "charges" for which Petitioner Abdullah is now held in Tunisia stem from the political crime of opposing the government, allegations included in the justification for deeming him an enemy combatant. Respondents fully observed Petitioner Abdullah's purported "re-trial" in Tunisia and despite its profound lack of due process, did not lodge any objections.

Further discovery is also likely to demonstrate that the extent of Respondents' involvement in Petitioners' transfers and detentions constitutes an exercise by Respondents of constructive custody over Petitioners. An arrangement constitutes constructive custody where: (1) the imprisoning sovereign is the Respondent's agent; (2) Petitioners' liberty is restrained by Respondents' parole conditions; or (3) there are continuing collateral disabilities that are the result of Respondents' actions. See Steinberg v. Police Court of Albany, 610 F.2d 449, 453 (6th Cir. 1979). Petitioners contend that discovery will show that the imprisoning sovereigns of Libya and Tunisia are holding Petitioners at Respondents' direct and intentional behest. Such a

scenario would erode, and perhaps eliminate altogether, the independence of any related, foreign-government conduct in connection with Petitioners.

Whether a habeas petitioner is detained in the actual custody of officials of the United States or of foreign governments at the behest of the United States does not affect the analysis of constructive custody. Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 49 (D.D.C. 2004) ("the Court cannot find any basis in the habeas statute for denying jurisdiction merely because the executive is allegedly working through the intermediary of a foreign ally."). Because Petitioners' detention will be shown to constitute constructive custody by the United States, the writ of habeas corpus remains available to them as a means for challenging their unlawful detention.

### III.   CONCLUSION

For the above-stated reasons, petitioners should be allowed to prosecute their petitions for habeas corpus before this Court.

Dated:     August 19, 2008                    Respectfully submitted,

/s/ Brian M. Childs
W. Scott O'Connell
Brian M. Childs
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000 (tel)
(617) 345-1300 (fax)
bchilds@nixonpeabody.com
*Counsel for Petitioner Rimi*

/s/ Kevin G. Boris
Kevin G. Boris
Louis A. Ruprecht
RUPRECHT, HART, & WEEKS LLP
306 Main Street
Millburn, NJ 07041
(973) 379-2400 (tel)
(973) 379-2446 (fax)
kboris@rhwlawfirm.com
*Counsel for Petitioner Hamoodah*

/s/ Zachary Katznelson
Zachary Katznelson
Cori Crider
REPRIEVE
P.O. Box 52742
22 Tudor Street
London, UK EC4Y 0AY
011 44 207 353 4640 (tel)
011 44 207 353 4641 (fax)
zachary@reprieve.org.uk
*Counsel for Petitioner Abdullah*

s/ Stephen Demick
Shereen J. Charlick
Stephen Demick
FEDERAL DEFENDERS
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467 (tel)
(619) 687-2666 (fax)
Shereen_Charlick@fd.org
*Counsel for Petitioner Khan*

11120441.5                                      10

Shayana Kadidal
Gitanjali S. Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6438 (tel)
(212) 614-6499 (fax)
*Of Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served via the e-filing system on the following counsel of record for respondents:

Terry Henry
Andrew I. Warden
US DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 7226
Washington, DC 20529-0001


/s/ Brian M. Childs
Brian M. Childs


Dated: August 19, 2008